# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALEGENT HEALTH – IMMANUEL MEDICAL )
CENTER, )
12809 West Dodge Road )
Omaha, Nebraska 68154 )
                                        )    Case No. _____

ALEGENT HEALTH – BERGAN MERCY HEALTH )
SYSTEM d/b/a ALEGENT HEALTH BERGAN )
MERCY MEDICAL CENTER, )
12809 West Dodge Road )
Omaha, Nebraska 68154 )
                                        )

ALEGENT HEALTH – BERGAN MERCY HEALTH )
SYSTEM d/b/a ALEGENT HEALTH MERCY )
HOSPITAL, COUNCIL BLUFFS, IOWA, )
12809 West Dodge Road )
Omaha, Nebraska 68154 )
                                        )

ANNA JAQUES HOSPITAL, )
25 Highland Avenue )
Newburyport, Massachusetts 01950 )
                                        )

BAY AREA HEALTHCARE GROUP, LTD. d/b/a )
CORPUS CHRISTI MEDICAL CENTER, )
One Park Plaza )
Nashville, Tennessee 37203 )
                                        )

BAYSTATE FRANKLIN MEDICAL CENTER, )
164 High Street )
Greenfield, Massachusetts 01301 )
                                        )

BAYSTATE MARY LANE HOSPITAL, )
CORPORATION )
85 South Street )
Ware, Massachusetts 01082 )
                                        )

BAYSTATE MEDICAL CENTER, INC., )
759 Chestnut Street )
Springfield, Massachusetts 01199 )
                                        )

BETH ISRAEL DEACONESS MEDICAL CENTER, )
INC., )
330 Brookline Avenue )
Boston, Massachusetts 02215 )

BOSTON MEDICAL CENTER CORPORATION,                )
1 Boston Medical Center Place                      )
Boston, Massachusetts 02118                        )
                                                   )
BROCKTON HOSPITAL, INC. d/b/a SIGNATURE            )
HEALTHCARE BROCKTON HOSPITAL,                      )
680 Centre Street                                  )
Brockton, Massachusetts 02302                      )
                                                   )
CATHOLIC HEALTH INITIATIVES COLORADO              )
d/b/a CENTURA HEALTH – PENROSE – ST.               )
FRANCIS HEALTH SERVICES,                           )
188 Inverness Drive West, Suite 500                )
Englewood, Colorado 80112                          )
                                                   )
CATHOLIC HEALTH INITIATIVES COLORADO              )
d/b/a CENTURA HEALTH – ST. ANTHONY                 )
CENTRAL HOSPITAL,                                  )
188 Inverness Drive West, Suite 500                )
Englewood, Colorado 80112                          )
                                                   )
CATHOLIC HEALTH INITIATIVES COLORADO              )
d/b/a CENTURA HEALTH – ST. ANTHONY NORTH           )
HOSPITAL,                                          )
188 Inverness Drive West, Suite 500                )
Englewood, Colorado 80112                          )
                                                   )
CATHOLIC HEALTH INITIATIVES COLORADO              )
d/b/a CENTURA HEALTH – ST. MARY CORWIN             )
MEDICAL CENTER,                                    )
188 Inverness Drive West, Suite 500                )
Englewood, Colorado 80112                          )
                                                   )
CATHOLIC HEALTH INITIATIVES, successor in          )
interest to MERCY MEDICAL CENTER, NAMPA,           )
198 Inverness Drive West, Suite 800                )
Englewood, Colorado 80112                          )
                                                   )
CATHOLIC HEALTH INITIATIVES, successor in          )
interest to ST. JOSEPH MEDICAL CENTER,             )
198 Inverness Drive West, Suite 800                )
Englewood, Colorado 80112                          )
                                                   )
CATHOLIC HEALTH INITIATIVES, successor in          )
interest to ST. JOSEPH NORTHEAST HEIGHTS           )

HOSPITAL,                                              )
198 Inverness Drive West, Suite 800                    )
Englewood, Colorado 80112                              )
                                                       )
CEDARS HEALTHCARE GROUP, LTD. f/d/b/a                  )
CEDARS MEDICAL CENTER,                                 )
One Park Plaza                                         )
Nashville, Tennessee 37203                             )
                                                       )
CENTRAL FLORIDA REGIONAL HOSPITAL, INC.,               )
One Park Plaza                                         )
Nashville, Tennessee 37203                             )
                                                       )
CENTRAL TENNESSEE HOSPITAL CORPORATION                 )
d/b/a HORIZON MEDICAL CENTER,                          )
One Park Plaza                                         )
Nashville, Tennessee 37203                             )
                                                       )
CHCA BAYSHORE, L.P. d/b/a BAYSHORE                     )
MEDICAL CENTER,                                         )
One Park Plaza                                         )
Nashville, Tennessee 37203                             )
                                                       )
CHCA BAYSHORE, L.P. d/b/a EAST HOUSTON                 )
MEDICAL CENTER,                                         )
One Park Plaza                                         )
Nashville, Tennessee 37203                             )
                                                       )
CHCA CLEAR LAKE, L.P. d/b/a CLEAR LAKE                 )
REGIONAL MEDICAL CENTER,                               )
One Park Plaza                                         )
Nashville, Tennessee 37203                             )
                                                       )
CHCA CONROE, L.P. d/b/a CONROE REGIONAL                )
MEDICAL CENTER,                                         )
One Park Plaza                                         )
Nashville, Tennessee 37203                             )
                                                       )
CHCA WEST HOUSTON, L.P. d/b/a WEST                     )
HOUSTON MEDICAL CENTER,                                 )
One Park Plaza                                         )
Nashville, Tennessee 37203                             )
                                                       )
COLUMBIA HOSPITAL (PALM BEACHES)                       )
LIMITED PARTNERSHIP d/b/a COLUMBIA                     )
HOSPITAL,                                              )

One Park Plaza                                          )
Nashville, Tennessee 37203                             )
                                                       )
COLUMBIA HOSPITAL AT MEDICAL CITY                      )
DALLAS SUBSIDIARY, L.P. d/b/a MEDICAL CITY             )
DALLAS HOSPITAL,                                       )
One Park Plaza                                          )
Nashville, Tennessee 37203                             )
                                                       )
COLUMBIA MEDICAL CENTER OF ARLINGTON                   )
SUBSIDIARY, L.P. d/b/a  MEDICAL CENTER OF              )
ARLINGTON,                                             )
One Park Plaza                                          )
Nashville, Tennessee 37203                             )
                                                       )
COLUMBIA MEDICAL CENTER OF DENTON                      )
SUBSIDIARY, L.P. d/b/a DENTON REGIONAL                 )
MEDICAL CENTER,                                        )
One Park Plaza                                          )
Nashville, Tennessee 37203                             )
                                                       )
COLUMBIA MEDICAL CENTER OF MCKINNEY                    )
SUBSIDIARY, L.P. f/d/b/a NORTH CENTRAL                 )
MEDICAL CENTER,                                        )
One Park Plaza                                          )
Nashville, Tennessee 37203                             )
                                                       )
COLUMBIA NORTH HILLS HOSPITAL                          )
SUBSIDIARY, L.P. d/b/a NORTH HILLS HOSPITAL,           )
One Park Plaza                                          )
Nashville, Tennessee 37203                             )
                                                       )
COLUMBIA PLAZA MEDICAL CENTER OF                       )
FORT WORTH SUBSIDIARY, L.P. d/b/a PLAZA                )
MEDICAL CENTER OF FORT WORTH,                          )
One Park Plaza                                          )
Nashville, Tennessee 37203                             )
                                                       )
COLUMBIA RIO GRANDE HEALTHCARE, L.P.                   )
d/b/a RIO GRANDE REGIONAL HOSPITAL,                    )
One Park Plaza                                          )
Nashville, Tennessee 37203                             )
                                                       )
COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P.                )
d/b/a VALLEY REGIONAL MEDICAL CENTER,                  )
One Park Plaza                                          )

Nashville, Tennessee 37203                         )
                                                   )
COOLEY DICKINSON HOSPITAL, INC.,                   )
30 Locust Street                                   )
Northhampton, Massachusetts 01060                  )
                                                   )
DOCTORS OSTEOPATHIC MEDICAL CENTER, INC. )
f/d/b/a GULF COAST HOSPITAL,                       )
One Park Plaza                                     )
Nashville, Tennessee 37203                         )
                                                   )
EDWARD WHITE HOSPITAL, INC.,                       )
One Park Plaza                                     )
Nashville, Tennessee 37203                         )
                                                   )
EHCA JOHNS CREEK, LLC f/d/b/a EMORY                )
DUNWOODY MEDICAL CENTER,                           )
6325 Hospital Parkway                              )
Johns Creek, Georgia 30097                         )
                                                   )
EHCA PEACHTREE, LLC f/d/b/a EMORY                  )
PEACHTREE REGIONAL HOSPITAL,                       )
One Park Plaza                                     )
Nashville, Tennessee 37203                         )
                                                   )
ESSENT HEALTHCARE OF MASSACHUSETTS,                )
INC. d/b/a MERRIMACK VALLEY HOSPITAL,              )
140 Lincoln Avenue                                 )
Haverhill, Massachusetts 01830                     )
                                                   )
FRANCISCAN HEALTH SYSTEM f/k/a                     )
FRANCISCAN HEALTH SYSTEM – WEST d/b/a              )
ST. CLARE HOSPITAL,                                )
1717 South J Street                                )
Tacoma, Washington 98405                           )
                                                   )
FRANCISCAN HEALTH SYSTEM f/k/a                     )
FRANCISCAN HEALTH SYSTEM – WEST d/b/a              )
ST. FRANCIS COMMUNITY HOSPITAL,                    )
1717 South J Street                                )
Tacoma, Washington 98405                           )
                                                   )
FRANCISCAN HEALTH SYSTEM f/k/a                     )
FRANCISCAN HEALTH SYSTEM – WEST d/b/a              )
ST. JOSEPH MEDICAL CENTER,                         )
1717 South J Street                                )

Tacoma, Washington 98405     )
                 )
GALEN OF FLORIDA, INC. d/b/a ST. PETERSBURG )
GENERAL HOSPITAL,       )
One Park Plaza         )
Nashville, Tennessee 37203     )
                 )
GALENCARE, INC. d/b/a BRANDON REGIONAL )
HOSPITAL,          )
One Park Plaza         )
Nashville, Tennessee 37203     )
                 )
GALENCARE, INC. d/b/a NORTHSIDE HOSPITAL, )
One Park Plaza         )
Nashville, Tennessee 37203     )
                 )
THE GOOD SAMARITAN HOSPITAL OF   )
CINCINNATI, OHIO,       )
375 Dixmyth Avenue       )
Cincinnati, Ohio 45220      )
                 )
GPCH-GP, INC. d/b/a GARDEN PARK   )
MEDICAL CENTER,       )
One Park Plaza         )
Nashville, Tennessee 37203     )
                 )
HALLMARK HEALTH SYSTEM, INC.,   )
170 Governors Avenue       )
Medford, Massachusetts 02155     )
                 )
HARRINGTON MEMORIAL HOSPITAL, INC.,  )
100 South Street        )
Southbridge, Massachusetts 01550    )
                 )
HCA HEALTH SERVICES OF OKLAHOMA, INC. )
d/b/a OU MEDICAL CENTER,     )
One Park Plaza         )
Nashville, Tennessee 37203     )
                 )
HCA HEALTH SERVICES OF TENNESSEE, INC. )
d/b/a CENTENNIAL MEDICAL CENTER,   )
One Park Plaza         )
Nashville, Tennessee 37203     )
                 )
HCA HEALTH SERVICES OF TENNESSEE, INC. )
d/b/a SUMMIT MEDICAL CENTER,    )

One Park Plaza                                              )
Nashville, Tennessee 37203                                 )
                                                           )
HCA-HEALTHONE LLC d/b/a NORTH                              )
SUBURBAN MEDICAL CENTER,                                   )
4900 South Monaco Street, Suite 380                        )
Denver, Colorado 80237                                     )
                                                           )
HCA-HEALTHONE LLC d/b/a PRESBYTERIAN/                      )
ST. LUKE'S MEDICAL CENTER,                                 )
4900 South Monaco Street, Suite 380                        )
Denver, Colorado 80237                                     )
                                                           )
HCA-HEALTHONE LLC d/b/a ROSE MEDICAL                      )
CENTER,                                                    )
4900 South Monaco Street, Suite 380                        )
Denver, Colorado 80237                                     )
                                                           )
HCA-HEALTHONE LLC d/b/a THE MEDICAL                       )
CENTER OF AURORA,                                          )
4900 South Monaco Street, Suite 380                        )
Denver, Colorado 80237                                     )
                                                           )
HEALTHALLIANCE HOSPITALS, INC.,                            )
60 Hospital Road                                           )
Leominster, Massachusetts 01453                            )
                                                           )
THE HENRY HEYWOOD MEMORIAL HOSPITAL                       )
d/b/a HEYWOOD HOSPITAL,                                    )
242 Green Street                                           )
Gardner, Massachusetts 01440                               )
                                                           )
HOLYOKE MEDICAL CENTER, INC. f/k/a                         )
HOLYOKE HOSPITAL, INC.,                                    )
575 Beech Street                                           )
Holyoke, Massachusetts 01040                               )
                                                           )
HTI MEMORIAL HOSPITAL CORPORATION                         )
d/b/a SKYLINE MEDICAL CENTER,                              )
One Park Plaza                                             )
Nashville, Tennessee 37203                                 )
                                                           )
IASIS HEALTHCARE, LLC d/b/a MEMORIAL                      )
HOSPITAL OF TAMPA,                                         )
117 Seaboard Lane, Building E                              )
Franklin, Tennessee 37067                                  )

JEWISH HOSPITAL & ST. MARY'S HEALTHCARE,    )
INC., successor in interest to CARITAS MEDICAL    )
CENTER,    )
200 Abraham Flexner Way    )
Louisville, Kentucky 40202    )
    )
JORDAN HOSPITAL, INC.,    )
275 Sandwich Street    )
Plymouth, Massachusetts 02360    )
    )
KENDALL HEALTHCARE GROUP, LTD. d/b/a    )
KENDALL REGIONAL MEDICAL CENTER,    )
One Park Plaza    )
Nashville, Tennessee 37203    )
    )
KPH-CONSOLIDATION, INC. d/b/a KINGWOOD    )
MEDICAL CENTER,    )
One Park Plaza    )
Nashville, Tennessee 37203    )
    )
LAKELAND MEDICAL CENTER, LLC,    )
One Park Plaza    )
Nashville, Tennessee 37203    )
    )
LAKEVIEW MEDICAL CENTER, LLC d/b/a    )
LAKEVIEW REGIONAL MEDICAL CENTER,    )
One Park Plaza    )
Nashville, Tennessee 37203    )
    )
LANDMARK MEDICAL CENTER,    )
115 Cass Avenue    )
Woonsocket, Rhode Island 02895    )
    )
LAWNWOOD MEDICAL CENTER, INC. d/b/a    )
LAWNWOOD REGIONAL MEDICAL CENTER &    )
HEART INSTITUTE,    )
One Park Plaza    )
Nashville, Tennessee 37203    )
    )
LAWRENCE GENERAL HOSPITAL,    )
1 General Street    )
Lawrence, Massachusetts 01841    )
    )
LOWELL GENERAL HOSPITAL,    )
295 Varnum Avenue    )

Lowell, Massachusetts 01854                          )
                                                     )
MARION COMMUNITY HOSPITAL, INC. d/b/a                )
OCALA REGIONAL MEDICAL CENTER,                       )
One Park Plaza                                       )
Nashville, Tennessee 37203                           )
                                                     )
THE MEDICAL CENTER OF SOUTHEAST TEXAS,               )
LP f/k/a MID-JEFFERSON HOSPITAL, LP,                 )
117 Seaboard Lane, Building E                        )
Franklin, Tennessee 37067                            )
                                                     )
THE MEDICAL CENTER OF SOUTHEAST TEXAS,               )
LP f/k/a PARK PLACE MEDICAL CENTER, LP,              )
117 Seaboard Lane, Building E                        )
Franklin, Tennessee 37067                            )
                                                     )
MEMORIAL HEALTHCARE GROUP, INC. d/b/a                )
MEMORIAL HOSPITAL JACKSONVILLE,                      )
One Park Plaza                                       )
Nashville, Tennessee 37203                           )
                                                     )
THE MEMORIAL HOSPITAL d/b/a MEMORIAL                 )
HOSPITAL OF RHODE ISLAND,                            )
111 Brewster Street                                  )
Pawtucket, Rhode Island 02860                        )
                                                     )
MESA GENERAL HOSPITAL, LP,                           )
515 Mesa Drive                                       )
Mesa, Arizona 85202                                  )
                                                     )
METHODIST HEALTHCARE SYSTEM OF SAN                   )
ANTONIO, LTD., L.L.P. f/d/b/a METHODIST              )
SPECIALTY AND TRANSPLANT HOSPITAL,                   )
7550 1H-10 West, Suite 1100                          )
San Antonio, Texas 78229                             )
                                                     )
METHODIST HEALTHCARE SYSTEM OF SAN                   )
ANTONIO, LTD., L.L.P. f/d/b/a NORTHEAST              )
METHODIST HOSPITAL,                                  )
7550 1H-10 West, Suite 1100                          )
San Antonio, Texas 78229                             )
                                                     )
METHODIST HEALTHCARE SYSTEM OF SAN                   )
ANTONIO, LTD., L.L.P. f/d/b/a SOUTHWEST              )
TEXAS METHODIST HOSPITAL,                            )

7550 1H-10 West, Suite 1100                          )
San Antonio, Texas 78229                             )
                                                     )
MIAMI BEACH HEALTHCARE GROUP, LTD. d/b/a             )
AVENTURA HOSPITAL AND MEDICAL CENTER,                )
One Park Plaza                                       )
Nashville, Tennessee 37203                           )
                                                     )
MIDWEST DIVISION – BLMC, LLC f/d/b/a                 )
BAPTIST LUTHERAN MEDICAL CENTER,                     )
One Park Plaza                                       )
Nashville, Tennessee 37203                           )
                                                     )
MIDWEST DIVISION – MCI, LLC f/d/b/a                  )
MEDICAL CENTER OF INDEPENDENCE,                      )
One Park Plaza                                       )
Nashville, Tennessee 37203                           )
                                                     )
MIDWEST DIVISION – RMC, LLC d/b/a                    )
RESEARCH MEDICAL CENTER,                             )
One Park Plaza                                       )
Nashville, Tennessee 37203                           )
                                                     )
THE MIRIAM HOSPITAL,                                 )
164 Summit Avenue                                    )
Providence, Rhode Island 02906                       )
                                                     )
MORTON HOSPITAL AND MEDICAL CENTER, INC., )
88 Washington Street                                 )
Taunton, Massachusetts 02780                         )
                                                     )
NEW PORT RICHEY HOSPITAL, INC. d/b/a                 )
COMMUNITY HOSPITAL OF NEW PORT RICHEY,               )
One Park Plaza                                       )
Nashville, Tennessee 37203                           )
                                                     )
NEWPORT HOSPITAL,                                    )
11 Friendship Street                                 )
Newport, Rhode Island, 02840                         )
                                                     )
NORTH FLORIDA REGIONAL MEDICAL                       )
CENTER, INC.,                                        )
One Park Plaza                                       )
Nashville, Tennessee 37203                           )
                                                     )
NORTHEAST HOSPITAL CORPORATION                       )

f/k/a BEVERLY HOSPITAL CORPORATION,       )
85 Herrick Street                          )
Beverly, Massachusetts 01915               )
                                           )
NORTHWEST MEDICAL CENTER, INC.,            )
One Park Plaza                             )
Nashville, Tennessee 37203                 )
                                           )
ORANGE PARK MEDICAL CENTER, INC.,          )
One Park Plaza                             )
Nashville, Tennessee 37203                 )
                                           )
OSCEOLA REGIONAL HOSPITAL, INC. d/b/a      )
OSCEOLA REGIONAL MEDICAL CENTER,           )
One Park Plaza                             )
Nashville, Tennessee 37203                 )
                                           )
PALMS WEST HOSPITAL LIMITED PARTNERSHIP    )
d/b/a PALMS WEST HOSPITAL,                  )
One Park Plaza                             )
Nashville, Tennessee 37203                 )
                                           )
PLANTATION GENERAL HOSPITAL LIMITED        )
PARTNERSHIP d/b/a PLANTATION GENERAL       )
HOSPITAL,                                  )
One Park Plaza                             )
Nashville, Tennessee 37203                 )
                                           )
PUTNAM COMMUNITY MEDICAL CENTER, LLC,      )
103 Powell Court, Suite 200                )
Brentwood, Tennessee 37027                 )
                                           )
QUINCY MEDICAL CENTER, INC.,               )
114 Whitwell Street                        )
Quincy, Massachusetts 02169                )
                                           )
RHODE ISLAND HOSPITAL,                     )
593 Eddy Street                            )
Providence, Rhode Island 02903             )
                                           )
RIVERSIDE HEALTHCARE SYSTEM, L.P.          )
d/b/a RIVERSIDE COMMUNITY HOSPITAL,        )
One Park Plaza                             )
Nashville, Tennessee 37203                 )
                                           )
ROGER WILLIAMS MEDICAL CENTER f/k/a        )

ROGER WILLIAMS HOSPITAL,  )
825 Chalkstone Avenue  )
Providence, Rhode Island 02908  )
  )
SAN JOSE HEALTHCARE SYSTEM, LP d/b/a  )
REGIONAL MEDICAL CENTER OF SAN JOSE,  )
One Park Plaza  )
Nashville, Tennessee 37203  )
  )
SAN JOSE HOSPITAL, L.P. f/d/b/a SAN JOSE  )
MEDICAL CENTER,  )
One Park Plaza  )
Nashville, Tennessee 37203  )
  )
SAINTS MEDICAL CENTER, INC. f/k/a SAINTS  )
MEMORIAL MEDICAL CENTER,  )
1 Hospital Drive  )
Lowell, Massachusetts 01852  )
  )
SOUTHCOAST HOSPITALS GROUP, INC.,  )
363 Highland Avenue  )
Fall River, Massachusetts 02720  )
  )
SOUTHWEST GENERAL HOSPITAL LIMITED  )
PARTNERSHIP,  )
7400 Barlite Boulevard  )
San Antonio, Texas 78224  )
  )
SPRING BRANCH MEDICAL CENTER, INC.,  )
One Park Plaza  )
Nashville, Tennessee 37203  )
  )
ST. DAVID'S HEALTHCARE PARTNERSHIP, L.P.,  )
LLP d/b/a NORTH AUSTIN MEDICAL CENTER,  )
98 San Jacinto Boulevard, Suite 1800  )
Austin, Texas 78701  )
  )
ST. DAVID'S HEALTHCARE PARTNERSHIP, L.P.,  )
LLP d/b/a ST. DAVID'S MEDICAL CENTER,  )
98 San Jacinto Boulevard, Suite 1800  )
Austin, Texas 78701  )
  )
ST. JOSEPH HEALTH SERVICES OF RHODE  )
ISLAND,  )
200 High Service Avenue  )
North Providence, Rhode Island 02904  )

```
                                                            )
ST. JOSEPH REGIONAL HEALTH NETWORK d/b/a                    )
ST. JOSEPH MEDICAL CENTER,                                  )
2500 Bernville Road                                         )
Reading, Pennsylvania 19603                                 )
                                                            )
ST. LUKE'S MEDICAL CENTER, LP,                              )
1800 East Van Buren Street                                  )
Phoenix, Arizona 85006                                      )
                                                            )
ST. VINCENT INFIRMARY MEDICAL CENTER,                       )
2 St. Vincent Circle                                        )
Little Rock, Arkansas 72205                                 )
                                                            )
STEWARD CARNEY HOSPITAL, INC. f/d/b/a                       )
CARITAS CARNEY HOSPITAL,                                    )
299 Park Avenue                                             )
New York, New York 10171                                    )
                                                            )
STEWARD GOOD SAMARITAN MEDICAL                              )
CENTER, INC. f/d/b/a CARITAS GOOD                           )
SAMARITAN MEDICAL CENTER,                                   )
299 Park Avenue                                             )
New York, New York 10171                                    )
                                                            )
STEWARD HOLY FAMILY HOSPITAL, INC. f/d/b/a                  )
CARITAS HOLY FAMILY HOSPITAL,                               )
299 Park Avenue                                             )
New York, New York 10171                                    )
                                                            )
STEWARD ST. ANNE'S HOSPITAL CORPORATION                     )
f/d/b/a ST. ANNE'S HOSPITAL,                                )
299 Park Avenue                                             )
New York, New York 10171                                    )
                                                            )
STEWARD ST. ELIZABETH'S MEDICAL CENTER                      )
OF BOSTON, INC. f/d/b/a CARITAS ST.                         )
ELIZABETH'S MEDICAL CENTER,                                 )
299 Park Avenue                                             )
New York, New York 10171                                    )
                                                            )
STURDY MEMORIAL HOSPITAL, INC.,                             )
211 Park Street                                             )
Attleboro, Massachusetts 02703                              )
                                                            )
SUNRISE HOSPITAL AND MEDICAL CENTER, LLC, )
```

One Park Plaza                                          )
Nashville, Tennessee 37203                             )
                                                       )
TEMPE ST. LUKE'S HOSPITAL, A CAMPUS OF                 )
ST. LUKE'S MEDICAL CENTER d/b/a TEMPE ST.              )
LUKE'S MEDICAL CENTER,                                 )
1500 South Mill Avenue                                 )
Tempe, Arizona 85281                                   )
                                                       )
TOWN & COUNTRY HOSPITAL, LP,                           )
6001 Webb Road                                         )
Tampa, Florida 33615                                   )
                                                       )
THE TRUSTEES OF NOBLE HOSPITAL, INC.,                  )
d/b/a NOBLE HOSPITAL                                   )
115 West Silver Street                                 )
Westfield, Massachusetts 01086                         )
                                                       )
TUFTS MEDICAL CENTER, INC. f/k/a NEW                   )
ENGLAND MEDICAL CENTER HOSPITALS, INC.,                )
800 Washington Street                                  )
Boston, Massachusetts 02111                            )
                                                       )
UMASS MEMORIAL HEALTH CARE, INC.                       )
d/b/a MARLBOROUGH HOSPITAL,                            )
One Biotech Park, 365 Plantation Street                )
Worcester, Massachusetts 01605                         )
                                                       )
UMASS MEMORIAL HEALTH CARE, INC.                       )
f/d/b/a UMASS MEMORIAL HOSPITAL,                       )
One Biotech Park, 365 Plantation Street                )
Worcester, Massachusetts 01605                         )
                                                       )
UMASS MEMORIAL HEALTH CARE. INC.                       )
d/b/a UMASS MEMORIAL MEDICAL CENTER,                   )
One Biotech Park, 365 Plantation Street                )
Worcester, Massachusetts 01605                         )
                                                       )
WEST VALLEY MEDICAL CENTER, INC.,                      )
One Park Plaza                                         )
Nashville, Tennessee 37203                             )
                                                       )
            Plaintiffs,                                )
                                                       )
                                                       )
        v.                                             )

14

|  | ) |
| --- | --- |
| KATHLEEN SEBELIUS, Secretary | ) |
| United States Department of | ) |
| Health and Human Services, | ) |
| 200 Independence Avenue, S.W. | ) |
| Washington, DC  20201, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

**COMPLAINT FOR SUMS DUE AND FOR DECLARATORY
AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT**

## I.    INTRODUCTION

1.    This is an action for judicial review of a final decision of the Secretary of the Department of Health and Human Services ("Secretary") denying Medicare disproportionate share hospital ("DSH") payments to the plaintiff Hospitals for services furnished to low-income patients.

2.    The Medicare DSH payment is for hospitals, like the plaintiff Hospitals, that shoulder the financial burden of providing care for low-income patients.  It is based on a proxy-measure for a hospital's low-income patient utilization, which is the sum of two fractions expressed as percentages.  *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi); 42 C.F.R. § 412.106(b) (2003).

3.    One of the two fractions used to calculate the DSH payment is commonly called the "Medicaid fraction."  This fraction represents the percentage of a hospital's *total* patient days attributable to patients who were:  i) "eligible for medical assistance" under a State Medicaid plan; and (ii) "*not* entitled to benefits under part A" of the Medicare statute. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).  The larger the percentage derived from this fraction, the greater the DSH payment owed to the hospital.

4.    The second fraction used to calculate the DSH payment is sometimes called the "Medicare/SSI fraction" or the "SSI fraction" for short.  The denominator of this fraction

consists of a hospital's patient days for patients who *were* "entitled to benefits under part A" of the Medicare statute. *Id.* § 1395ww(d)(5)(F)(vi)(I). The numerator of the Medicare/SSI fraction includes the portion of those days attributable to beneficiaries who were also entitled to benefits under the federal supplemental security income ("SSI") program.

5.    This case concerns the proper treatment in the calculation of the Medicare DSH payment of inpatient hospital days for patients who were eligible for medical assistance under a State plan and who were enrolled in a Medicare+Choice ("M+C") or Medicare Advantage plan under part C of the Medicare Act ("Medicare part C days").    The precise question at issue is whether patients who were enrolled in and receiving benefits under Medicare part C were "entitled to benefits under [Medicare] part A" for the specific days when they were hospitalized.

6.    The patient days at issue in this case were not covered or paid under Medicare part A nor was utilization of the part A inpatient hospital service benefit charged to the beneficiary. Nevertheless, the defendant Secretary determined that Medicare part C days should be excluded from the numerator of the Medicaid fraction (if the patient is also eligible for Medicaid) on the grounds that the patients were "entitled to benefits under part A."

7.    The Secretary's exclusion of the Hospitals' Medicaid eligible Medicare part C days from the numerator of the Medicaid fraction reduced the Hospitals' DSH payments by approximately $60 million for the periods at issue.

8.    Although the Secretary excluded Medicare part C days from the numerator of the Medicaid fraction on the grounds that the patients were "entitled to benefits under part A," she did not count the days in the other component of the DSH calculation, the Medicare/SSI fraction. The Secretary does not dispute that the same patients' inpatient hospital days at issue here were not counted in the Medicare/SSI fraction as days for patients who were "entitled to benefits

under part A." Indeed, Medicare part C days were not counted in the Medicare/SSI fraction for any period prior to 2007, except for a miniscule number that were counted due to an editing error by a CMS employee.

9. The Secretary's decision is wrong, and must be reversed, because it conflicts with the plain language of the statute governing the calculation of the DSH payment, 42 U.S.C. § 1395ww(d)(5)(F)(vi), as construed by this Court and one other federal district court. *See Northeast Hosp. Corp. v. Sebelius*, 699 F. Supp. 2d 81, 92-94 (D.D.C. 2010) (Bates, J.); *Metropolitan Hosp., Inc. v. U.S. Dep't of Health & Human Servs.*, 702 F. Supp. 2d 808, 821-25 (W.D. Mich. 2010). In *Northeast*, Judge Bates concluded that "[u]nder the Medicare statute, 'entitlement of an individual to [Medicare part A] benefits for a month shall consist of entitlement to have payment made under, and subject to the limitations in, [Medicare] part A . . . on his behalf for [certain] services.'" *Northeast*, 699 F. Supp. 2d at 92-94 (citing 42 U.S.C. § 426(c)(1)); *see also Metropolitan Hosp.*, 702 F. Supp. 2d at 824 (holding that "entitled to benefits under part A" as used in the DSH statute means entitlement to payment under part A).

10. In addition, in *Northeast*, Judge Bates ruled that the Secretary's interpretation with respect to Medicare part C days is also an unreasonable interpretation of the statute and thus fails both steps of the familiar *Chevron* standard of review. From 1990 until shortly after Judge Bates issued his decision in *Northeast Hospital*, the Secretary interpreted the exact same term "entitled to benefits under part A," as it is used in the next subparagraph of the statute, 42 U.S.C. § 1395ww(d)(5)(G) (governing Medicare dependent hospitals), to mean that a patient is not entitled to benefits under part A for inpatient hospital days that occur after the patient has exhausted part A benefits for inpatient hospital services and for which no Medicare part A payment is made. *See, e.g.*, 55 Fed. Reg. 35990, 35996 (Sept. 4, 1990). In *Northeast*, the Court

found that the Secretary has neither acknowledged nor explained that inconsistency and the agency is bound by that prior interpretation here.

11.     The Secretary's decision in this case is also inconsistent with the Medicare DSH regulation, 42 C.F.R. § 412.106, that was in effect during the cost reporting periods at issue here, all of which ended prior to October 1, 2004.  As the Secretary elsewhere acknowledged in rulemaking proceedings to amend the DSH regulation with respect to the treatment of Medicare part C days like the days at issue here, the Secretary's agency did not construe the regulation in effect during the periods at issue here to include Medicare part C days as days for patients entitled to benefits under part A.  *See* 69 Fed. Reg. 48916, 49098 (Aug. 11, 2004).

12.     To the contrary, the Secretary's decision in this case excluding the days at issue from the numerator of the Medicaid fraction does not reflect the Secretary's actual policy with respect to the treatment of these days in the DSH calculation during the periods at issue in this case.  *See id.*; *see also Presbyterian Med. Ctr. of Phila. v. Aetna Life Ins. Co.*, CMS Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 45,032 (Nov. 29, 1996).

13.     For these reasons, the Secretary's decision should be set aside and the Court should direct the Secretary to pay the plaintiff Hospitals the additional Medicare DSH payments due them plus interest.

## II.     JURISDICTION AND VENUE

14.     This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.*

15.     Jurisdiction is proper under 42 U.S.C. § 1395oo(f).

16.     Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1).

### III.    PARTIES

17.    The plaintiffs in this action are:

1.    Alegent Health – Bergan Mercy Health System d/b/a Alegent Health Bergan Mercy Medical Center, Medicare Provider No. 28-0060, fiscal year ending June 30, 2003;

2.    Alegent Health – Bergan Mercy Health System d/b/a Alegent Health Mercy Hospital, Council Bluffs, Iowa, Medicare Provider No. 16-0028, fiscal years ending June 30, 2001, June 30, 2002, and June 30, 2003;

3.    Alegent Health – Immanuel Medical Center, Medicare Provider No. 28-0081, fiscal years ending June 30, 2001, June 30, 2002, and June 30, 2003;

4.    Anna Jaques Hospital, Medicare Provider No. 22-0029, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

5.    Bay Area Healthcare Group, Ltd. d/b/a Corpus Christi Medical Center, Medicare Provider No. 45-0788, fiscal years ending August 31, 2001 and August 31, 2002;

6.    Baystate Franklin Medical Center, Medicare Provider No. 22-0016, fiscal year ending September 30, 2004;

7.    Baystate Mary Lane Hospital Corporation, Medicare Provider No. 22-0050, fiscal year ending September 30, 2002;

8.    Baystate Medical Center, Inc., Medicare Provider No. 22-0077, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

9.    Beth Israel Deaconess Medical Center, Inc., Medicare Provider No. 22-0086, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

10.    Boston Medical Center Corporation, Medicare Provider No. 22-0031, fiscal years ending September 30, 2002 and September 30, 2003;

11.    Brockton Hospital, Inc. d/b/a Signature Healthcare Brockton Hospital, Medicare Provider No. 22-0052, fiscal years ending September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

12. Catholic Health Initiatives Colorado d/b/a Centura Health – Penrose – St. Francis Health Services, Medicare Provider No. 06-0031, fiscal years ending June 30, 2002 and June 30, 2003;

13. Catholic Health Initiatives Colorado d/b/a Centura Health – St. Anthony Central Hospital, Medicare Provider No. 06-0015, fiscal years ending June 30, 1999, June 30, 2000, June 30, 2001, June 30, 2002, and June 30, 2003;

14. Catholic Health Initiatives Colorado d/b/a Centura Health – St. Anthony North Hospital, Medicare Provider No. 06-0104, fiscal years ending June 30, 2000, June 30, 2001, June 30, 2002, and June 30, 2003;

15. Catholic Health Initiatives Colorado d/b/a Centura Health – St. Mary Corwin Medical Center, Medicare Provider No. 06-0012, fiscal years ending June 30, 1999, June 30, 2000, June 30, 2001, June 30, 2002, and June 30, 2003;

16. Catholic Health Initiatives, successor in interest to Mercy Medical Center, Nampa, Medicare Provider No. 13-0013, fiscal years ending June 30, 2001, June 30, 2002, and June 30, 2003;

17. Catholic Health Initiatives, successor in interest to St. Joseph Medical Center, Medicare Provider No. 32-0009, fiscal years ending June 30, 2000, June 30, 2001, and August 31, 2002;

18. Catholic Health Initiatives, successor in interest to St. Joseph Northeast Heights Hospital, Medicare Provider No. 32-0017, fiscal years ending June 30, 2001 and August 31, 2002;

19. Cedars Healthcare Group, Ltd. f/d/b/a Cedars Medical Center, Medicare Provider No. 10-0009, fiscal years ending December 31, 2001 and December 31, 2002;

20. Central Florida Regional Hospital, Inc., Medicare Provider No. 10-0161, fiscal year ending May 31, 2002;

21. Central Tennessee Hospital Corporation d/b/a Horizon Medical Center, Medicare Provider No. 44-0046, fiscal year ending May 31, 2002;

22. CHCA Bayshore, L.P. d/b/a Bayshore Medical Center, Medicare Provider No. 45-0097, fiscal years ending December 31, 2001 and December 31, 2002;

23. CHCA Bayshore, L.P. d/b/a East Houston Medical Center, Medicare Provider No. 45-0126, fiscal year ending February 28, 2002;

24. CHCA Clear Lake, L.P. d/b/a Clear Lake Regional Medical Center, Medicare Provider No. 45-0617, fiscal year ending December 31, 2002;

25. CHCA Conroe, L.P. d/b/a Conroe Regional Medical Center, Medicare Provider No. 45-0222, fiscal years ending December 31, 2001 and December 31, 2002;

26. CHCA West Houston, L.P. d/b/a West Houston Medical Center, Medicare Provider No. 45-0644, fiscal years ending December 31, 2001 and December 31, 2002;

27. Columbia Hospital (Palm Beaches) Limited Partnership d/b/a Columbia Hospital, Medicare Provider No. 10-0234, fiscal year ending June 30, 2002;

28. Columbia Hospital at Medical City Dallas Subsidiary, L.P. d/b/a Medical City Dallas Hospital, Medicare Provider No. 45-0647, fiscal year ending May 31, 2002;

29. Columbia Medical Center of Arlington Subsidiary, L.P. d/b/a Medical Center of Arlington, Medicare Provider No. 45-0675, fiscal year ending May 31, 2002;

30. Columbia Medical Center of Denton Subsidiary, L.P. d/b/a Denton Regional Medical Center, Medicare Provider No. 45-0634, fiscal year ending December 31, 2001;

31. Columbia Medical Center of McKinney Subsidiary, L.P. f/d/b/a North Central Medical Center, Medicare Provider No. 45-0403, fiscal year ending August 31, 2002;

32. Columbia North Hills Hospital Subsidiary, L.P. d/b/a North Hills Hospital, Medicare Provider No. 45-0087, fiscal year ending May 31, 2002;

33. Columbia Plaza Medical Center of Fort Worth Subsidiary, L.P. d/b/a Plaza Medical Center of Fort Worth, Medicare Provider No. 45-0672, fiscal year ending January 31, 2002;

34. Columbia Rio Grande Healthcare, L.P. d/b/a Rio Grande Regional Hospital, Medicare Provider No. 45-0711, fiscal year ending September 30, 2002;

35. Columbia Valley Healthcare System, L.P. d/b/a Valley Regional Medical Center, Medicare Provider No. 45-0662, fiscal year ending March 31, 2002;

36. Cooley Dickinson Hospital, Inc., Medicare Provider No. 22-0015, fiscal years ending September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

37. Doctors Osteopathic Medical Center, Inc. f/d/b/a Gulf Coast Hospital, Medicare Provider No. 10-0279, fiscal years ending December 31, 2001 and December 31, 2002;

38. Edward White Hospital, Inc., Medicare Provider No. 10-0239, fiscal year ending December 31, 2001;

39. EHCA Johns Creek, LLC f/d/b/a Emory Dunwoody Medical Center, Medicare Provider No. 11-0172, fiscal year ending December 31, 2002;

40. EHCA Peachtree, LLC f/d/b/a Emory Peachtree Regional Hospital, Medicare Provider No. 11-0020, fiscal year ending December 31, 2002;

41. Essent Healthcare of Massachusetts, Inc. d/b/a Merrimack Valley Hospital, Medicare Provider No. 22-0174, fiscal year ending September 30, 2002;

42. Franciscan Health System f/k/a Franciscan Health System – West d/b/a St. Clare Hospital, Medicare Provider No. 50-0021, fiscal year ending June 30, 2003;

43. Franciscan Health System f/k/a Franciscan Health System – West d/b/a St. Francis Community Hospital, Medicare Provider No. 50-0141, fiscal years ending June 30, 2002 and June 30, 2003;

44. Franciscan Health System f/k/a Franciscan Health System – West d/b/a St. Joseph Medical Center, Medicare Provider No. 50-0108, fiscal years ending June 30, 2002 and June 30, 2003;

45. Galen of Florida, Inc. d/b/a St. Petersburg General Hospital, Medicare Provider No. 10-0180, fiscal year ending April 30, 2002;

46. Galencare, Inc. d/b/a Brandon Regional Hospital, Medicare Provider No. 10-0243, fiscal years ending December 31, 2001 and December 31, 2002;

47. Galencare, Inc. d/b/a Northside Hospital, Medicare Provider No. 10-0238, fiscal years ending September 30, 2001 and September 30, 2002;

48. The Good Samaritan Hospital of Cincinnati, Ohio, Medicare Provider No. 36-0134, fiscal years ending June 30, 2000, June 30, 2001, June 30, 2002, and June 30, 2003;

49. GPCH-GP, Inc. d/b/a Garden Park Medical Center, Medicare Provider No. 25-0123, fiscal year ending December 31, 2002;

50. Hallmark Health System, Inc., Medicare Provider No. 22-0070, fiscal years ending September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

51. Harrington Memorial Hospital, Inc., Medicare Provider No. 22-0019, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2002, September 30, 2003, and September 30, 2004;

52. HCA Health Services of Oklahoma, Inc. d/b/a OU Medical Center, Medicare Provider No. 37-0093, fiscal year ending August 31, 2002;

53. HCA Health Services of Tennessee, Inc. d/b/a Centennial Medical Center, Medicare Provider No. 44-0161, fiscal years ending December 31, 2001 and December 31, 2002;

54. HCA Health Services of Tennessee, Inc. d/b/a Summit Medical Center, Medicare Provider No. 44-0150, fiscal years ending December 31, 2001 and December 31, 2002;

55. HCA-HealthONE LLC d/b/a North Suburban Medical Center, Medicare Provider No. 06-0065, fiscal years ending December 31, 2001 and December 31, 2002;

56. HCA-HealthONE LLC d/b/a Presbyterian/St. Luke's Medical Center, Medicare Provider No. 06-0014, fiscal years ending August 31, 2001 and August 31, 2002;

57. HCA-HealthONE LLC d/b/a Rose Medical Center, Medicare Provider No. 06-0032, fiscal years ending December 31, 2001 and December 31, 2002;

58. HCA-HealthONE LLC d/b/a The Medical Center of Aurora, Medicare Provider No. 06-0100, fiscal years ending December 31, 2001 and December 31, 2002;

59. HealthAlliance Hospitals, Inc., Medicare Provider No. 22-0001, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, and September 30, 2003;

60. The Henry Heywood Memorial Hospital d/b/a Heywood Hospital, Medicare Provider No. 22-0095, fiscal years ending September 30, 2003 and September 30, 2004;

61. Holyoke Medical Center, Inc. f/k/a Holyoke Hospital, Inc., Medicare Provider No. 22-0024, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

62. HTI Memorial Hospital Corporation d/b/a Skyline Medical Center, Medicare Provider No. 44-0006, fiscal years ending November 30, 2001 and November 30, 2002;

63. Iasis Healthcare, LLC d/b/a Memorial Hospital of Tampa, Medicare Provider No. 10-0206, fiscal years ending November 30, 2001 and November 30, 2002;

64. Jewish Hospital & St. Mary's Healthcare, Inc., successor in interest to Caritas Medical Center, Medicare Provider No. 18-0037, fiscal years ending June 30, 2002 and June 30, 2003;

65. Jordan Hospital, Inc., Medicare Provider No. 22-0060, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

66. Kendall Healthcare Group, Ltd. d/b/a Kendall Regional Medical Center, Medicare Provider No. 10-0209, fiscal years ending December 31, 2001 and December 31, 2002;

67. KPH-Consolidation, Inc. d/b/a Kingwood Medical Center, Medicare Provider No. 45-0775, fiscal year ending September 30, 2002;

68. Lakeland Medical Center, LLC, Medicare Provider No. 19-0200, fiscal years ending December 31, 2001 and December 31, 2002;

69. Lakeview Medical Center, LLC d/b/a Lakeview Regional Medical Center, Medicare Provider No. 19-0177, fiscal years ending December 31, 2001 and December 31, 2002;

70. Landmark Medical Center, Medicare Provider No. 41-0011, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

71. Lawnwood Medical Center, Inc. d/b/a Lawnwood Regional Medical Center & Heart Institute, Medicare Provider No. 10-0246, fiscal years ending September 30, 2001 and September 30, 2002;

72. Lawrence General Hospital, Medicare Provider No. 22-0010, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

73. Lowell General Hospital, Medicare Provider No. 22-0063, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

74. Marion Community Hospital, Inc. d/b/a Ocala Regional Medical Center, Medicare Provider No. 10-0212, fiscal year ending August 31, 2001;

75. The Medical Center of Southeast Texas, LP f/k/a Mid-Jefferson Hospital, LP, Medicare Provider No. 45-0514, fiscal years ending September 30, 2001 and July 31, 2003;

76. The Medical Center of Southeast Texas, LP f/k/a Park Place Medical Center, LP, Medicare Provider No. 45-0518, fiscal years ending September 30, 2001, July 31, 2003, and November 30, 2003;

77. Memorial Healthcare Group, Inc. d/b/a Memorial Hospital Jacksonville, Medicare Provider No. 10-0179, fiscal year ending December 31, 2001;

78. The Memorial Hospital d/b/a Memorial Hospital of Rhode Island, Medicare Provider No. 41-0001, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, and September 30, 2003;

79. Mesa General Hospital, LP, Medicare Provider No. 03-0017, fiscal years ending September 30, 2000, September 30, 2001, September 30, 2002, and September 30, 2003;

80. Methodist Healthcare System of San Antonio, Ltd., L.L.P. f/d/b/a Methodist Specialty and Transplant Hospital, Medicare Provider No. 45-0631, fiscal year ending June 30, 2002;

81. Methodist Healthcare System of San Antonio, Ltd., L.L.P. f/d/b/a Northeast Methodist Hospital, Medicare Provider No. 45-0733, fiscal year ending March 31, 2002;

82. Methodist Healthcare System of San Antonio, Ltd., L.L.P. f/d/b/a Southwest Texas Methodist Hospital, Medicare Provider No. 45-0388, fiscal year ending June 30, 2002;

83. Miami Beach Healthcare Group, Ltd. d/b/a Aventura Hospital and Medical Center, Medicare Provider No. 10-0131, fiscal years ending December 31, 2001 and December 31, 2002;

84. Midwest Division – BLMC, LLC f/d/b/a Baptist Lutheran Medical Center, Medicare Provider No. 26-0107, fiscal year ending December 31, 2002;

85. Midwest Division – MCI, LLC f/d/b/a Medical Center of Independence, Medicare Provider No. 26-0166, fiscal year ending December 31, 2002;

86. Midwest Division – RMC, LLC d/b/a Research Medical Center, Medicare Provider No. 26-0027, fiscal year ending December 31, 2002;

87. The Miriam Hospital, Medicare Provider No. 41-0012, fiscal years ending September 30, 1999, September 30, 2001, September 30, 2002, and September 30, 2004;

88. Morton Hospital and Medical Center, Inc., Medicare Provider No. 22-0073, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, and September 30, 2003;

89. New Port Richey Hospital, Inc. d/b/a Community Hospital of New Port Richey, Medicare Provider No. 10-0191, fiscal year ending June 30, 2002;

90. Newport Hospital, Medicare Provider No. 41-0006, fiscal years ending September 30, 2002 and September 30, 2004;

91. North Florida Regional Medical Center, Inc., Medicare Provider No. 10-0204, fiscal year ending February 28, 2002;

92. Northeast Hospital Corporation f/k/a Beverly Hospital Corporation, Medicare Provider No. 22-0033, fiscal years ending September 30, 2003 and September 30, 2004;

93. Northwest Medical Center, Inc., Medicare Provider No. 10-0189, fiscal years ending December 31, 2001 and December 31, 2002;

94. Orange Park Medical Center, Inc., Medicare Provider No. 10-0226, fiscal year ending June 30, 2002;

95. Osceola Regional Hospital, Inc. d/b/a Osceola Regional Medical Center, Medicare Provider No. 10-0110, fiscal years ending December 31, 2001 and December 31, 2002;

96. Palms West Hospital Limited Partnership d/b/a Palms West Hospital, Medicare Provider No. 10-0269, fiscal year ending May 31, 2002;

97. Plantation General Hospital Limited Partnership d/b/a Plantation General Hospital, Medicare Provider No. 10-0167, fiscal years ending August 31, 2001 and August 31, 2002;

98. Putnam Community Medical Center, LLC, Medicare Provider No. 10-0232, fiscal year ending February 28, 2002;

99. Quincy Medical Center, Inc., Medicare Provider No. 22-0067, fiscal years ending September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

100. Rhode Island Hospital, Medicare Provider No. 41-0007, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, and September 30, 2004;

101. Riverside Healthcare System, L.P. d/b/a Riverside Community Hospital, Medicare Provider No. 05-0022, fiscal year ending April 30, 2002;

102. Roger Williams Medical Center f/k/a Roger Williams Hospital, Medicare Provider No. 41-0004, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

103. Saints Medical Center, Inc. f/k/a Saints Memorial Medical Center, Medicare Provider No. 22-0082, fiscal year ending September 30, 2000;

104. San Jose Healthcare System, LP d/b/a Regional Medical Center of San Jose, Medicare Provider No. 05-0125, fiscal years ending December 31, 2001 and December 31, 2002;

105. San Jose Hospital, L.P. f/d/b/a San Jose Medical Center, Medicare Provider No. 05-0215, fiscal year ending January 31, 2002;

106. Southcoast Hospitals Group, Inc., Medicare Provider No. 22-0074, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

107. Southwest General Hospital Limited Partnership, Medicare Provider No. 45-0697, fiscal years ending September 30, 2001, September 30, 2002, and September 30, 2003;

108. Spring Branch Medical Center, Inc., Medicare Provider No. 45-0630, fiscal year ending June 30, 2002;

109. St. David's Healthcare Partnership, L.P., LLP d/b/a North Austin Medical Center, Medicare Provider No. 45-0809, fiscal year ending June 30, 2002;

110. St. David's Healthcare Partnership, L.P., LLP d/b/a St. David's Medical Center, Medicare Provider No. 45-0431, fiscal year ending December 31, 2001;

111. St. Joseph Health Services of Rhode Island, Medicare Provider No. 41-0005, fiscal years ending September 30, 1999 and September 30, 2000;

112. St. Joseph Regional Health Network d/b/a St. Joseph Medical Center, Medicare Provider No. 39-0096, fiscal years ending June 30, 1999, June 30, 2000, June 30, 2001, and June 30, 2003;

113. St. Luke's Medical Center, LP, Medicare Provider No. 03-0037, fiscal years ending May 31, 2000, May 31, 2001, May 31, 2002, and May 31, 2003;

114. St. Vincent Infirmary Medical Center, Medicare Provider No. 04-0007, fiscal year ending August 31, 2000;

115. Steward Carney Hospital, Inc. f/d/b/a Caritas Carney Hospital, Medicare Provider No. 22-0017, fiscal years ending September 30, 1999, September 30, 2001, September 30, 2002, and September 30, 2003;

116. Steward Good Samaritan Medical Center, Inc. f/d/b/a Caritas Good Samaritan Medical Center, Medicare Provider No. 22-0111, fiscal years

ending September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

117.  Steward Holy Family Hospital, Inc. f/d/b/a Caritas Holy Family Hospital, Medicare Provider No. 22-0080, fiscal years ending September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

118.  Steward St. Anne's Hospital Corporation f/d/b/a St. Anne's Hospital, Medicare Provider No. 22-0020, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

119.  Steward St. Elizabeth's Medical Center of Boston, Inc. f/d/b/a Caritas St. Elizabeth's Medical Center, Medicare Provider No. 22-0036, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

120.  Sturdy Memorial Hospital, Inc., Medicare Provider No. 22-0008, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2002, and September 30, 2003;

121.  Sunrise Hospital and Medical Center, LLC, Medicare Provider No. 29-0003, fiscal year ending January 31, 2002;

122.  Tempe St. Luke's Hospital, a Campus of St. Luke's Medical Center d/b/a Tempe St. Luke's Medical Center, Medicare Provider No. 03-0019, fiscal years ending May 31, 2000, May 31, 2001, May 31, 2002, and May 31, 2003;

123.  Town & Country Hospital, LP, Medicare Provider No. 10-0255, fiscal years ending December 31, 2000, December 31, 2001, December 31, 2002, and December 31, 2003;

124.  The Trustees of Noble Hospital, Inc. d/b/a Noble Hospital, Medicare Provider No. 22-0065, fiscal year ending September 30, 2004;

125.  Tufts Medical Center, Inc. f/k/a New England Medical Center Hospitals, Inc., Medicare Provider No. 22-0116, fiscal years ending September 30, 1999, September 30, 2000, September 30, 2001, September 30, 2002, September 30, 2003, and September 30, 2004;

126.  UMass Memorial Health Care, Inc. d/b/a Marlborough Hospital, Medicare Provider No. 22-0049, fiscal years ending September 30, 2002 and September 30, 2003;

127.  UMass Memorial Health Care, Inc. f/d/b/a UMass Memorial Hospital, Medicare Provider No. 22-0057, fiscal year ending September 30, 1999;

128.  UMass Memorial Health Care. Inc. d/b/a UMass Memorial Medical Center, Medicare Provider No. 22-0163, fiscal years ending September 30, 2000, September 30, 2001, September 30, 2002, and September 30, 2003; and

129.  West Valley Medical Center, Inc., Medicare Provider No. 13-0014, fiscal years ending September 30, 2001 and September 30, 2002.

18.  The defendant is Kathleen Sebelius in her official capacity as Secretary of the United States Department of Health and Human Services ("HHS"), the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to her, her subordinates, and to her official predecessors or successors as the context requires.

19.  The Centers for Medicare and Medicaid Services ("CMS") is a component of HHS with responsibility for the day-to-day operation and administration of the Medicare program.  At some times relevant to this case, CMS was known as the Health Care Financing Administration.  References to CMS herein are meant to refer to the agency and its predecessors.

## IV.     MEDICARE PAYMENT AND APPEALS PROCESSES

20.  The Secretary contracts with private organizations (usually insurance companies) to perform certain audit and payment functions under part A of the Medicare program.  These organizations are commonly referred to as "fiscal intermediaries" or, more recently, as "Medicare Administrative Contractors."  References herein to intermediaries are meant to refer to those contractors.

21.  After the close of each fiscal year, a hospital is required to file a cost report with the fiscal intermediary.  42 C.F.R. §§ 413.20, 413.24.

22.  The Medicare fiscal intermediary analyzes the cost report and issues a determination, called a Notice of Program Reimbursement or "NPR," that informs the hospital of the intermediary's final determination as to the amount of program reimbursement due the

hospital from the Medicare program for the period. *See* 42 C.F.R. § 405.1803. *See also In re Medicare Reimbursement Litig.*, 309 F. Supp. 2d 89, 92 (D.D.C. 2004), *aff'd*, 414 F.3d 7 (D.C. Cir. 2005), *cert. denied*, 547 U.S. 1054 (2006).

23.     A hospital is entitled to appeal to the Provider Reimbursement Review Board ("PRRB" or "Board"), an administrative tribunal appointed by the Secretary, if it is dissatisfied with a fiscal intermediary's determination as to the amount of Medicare payment due the hospital for a cost reporting period. *See* 42 U.S.C. §§ 1395oo(a) and (h); 42 C.F.R. § 405.1835. The members of the Board must be "knowledgeable in the field of payment to providers of service" under the Medicare program. 42 U.S.C. § 1395oo(h).

24.     Hospitals may take appeals to the Board individually for a single cost reporting period or together in a group appeal on an issue common to two or more hospitals and for one or more cost reporting periods. *See* 42 U.S.C. §§ 1395oo(a) and (b); 42 C.F.R. §§ 405.1835 and 405.1837.

25.     The amount in controversy required for an individual appeal to the Board is $10,000 at the time the appeal is filed. *See* 42 U.S.C. § 1395oo(a)(2); 42 C.F.R. §§ 405.1835(a)(2), 405.1839(a)(1)-(2) and (c)(5). The amount in controversy for a group appeal to the Board is $50,000 in the aggregate for all hospitals and cost reporting periods included in the group appeal. *See* 42 U.S.C. § 1395oo(b); 42 C.F.R. §§ 405.1837(a)(3), 405.1839(b) and (c)(5). The aggregate amount in controversy in this case is approximately $60 million.

26.     The final decision of the PRRB is subject to review by the Administrator of CMS pursuant to delegation of authority by the Secretary. *See* 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1875. A hospital that is dissatisfied with the Secretary's final decision, as set forth either in a final decision of the Board or of the Administrator of CMS, may appeal to this Court within

60 days of receipt of notice of the decision.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1877(a) and (f).

## V.    OVERVIEW OF THE MEDICARE PROGRAM

27.    The Medicare Act, in title XVIII of the Social Security Act, provides health insurance for aged, disabled, and certain individuals with end-stage renal disease.  42 U.S.C. § 1395 *et seq*.

28.    Throughout the period at issue, the Medicare Act consisted of four parts: A through D.  Only parts A and C are relevant here.

29.    Part A covers "inpatient hospital services" furnished by participating providers of services, like the plaintiff Hospital.  42 U.S.C. § 1395d(a)(1).  The Medicare part A benefit for inpatient hospital services consists of the right to have Medicare payment made on a beneficiary's behalf for a limited number of days of inpatient hospital care in a spell of illness. *See* 42 U.S.C. §§ 426(c), 1395d(a)(1).  The Medicare part A benefit entitles an individual to have payment made on his or her behalf for 90 days of inpatient hospital services in a spell of illness, with a "lifetime reserve" of 60 additional days.  *See* 42 U.S.C. § 1395d(a)(1); 42 C.F.R. § 409.61(a).

30.    The right to have payment made on an individual's behalf is the *only* benefit provided under part A of the Medicare statute.  *See* 42 U.S.C. §§ 426(c), 1395d(a).  There is no benefit provided under part A other than the liquidation of an individual's liability for medical services rendered.

31.    Part B covers outpatient hospital services.  *See* 42 U.S.C. § 1395k(a)(2)(B).

32.    Part C of the Medicare Act governs the Medicare+Choice program at issue here. In 1997, Congress enacted the Medicare+Choice program and added its governing provisions to

part C of the Medicare statute, effective January 1, 1999. *See* Balanced Budget Act of 1997, §

4001, Pub. L. No. 105-33 (codified at 42 U.S.C. § 1395w-21). The Medicare+Choice program is

now known as Medicare Advantage.

     33.    An individual who is enrolled in a Medicare+Choice or Medicare Advantage plan

under part C of the Medicare statute is not entitled to have Medicare part A benefits paid on his

behalf and his utilization of inpatient hospital services is not charged against his limitations on

coverage under part A. The Medicare Act provides that a Medicare beneficiary may elect to

receive Medicare benefits *either* "through the original [M]edicare fee-for-service program under

parts A and B of [the Medicare statute], *or* through enrollment in a Medicare+Choice [or

Medicare Advantage plan] under this part," *i.e.*, part C, of the Medicare statute. 42 U.S.C. §

1395w-21(a)(1) (emphasis added); 42 C.F.R. § 422.50; *see also* 63 Fed. Reg. 34968 (June 26,

1998).

     34.    Once an individual elects to enroll in a Medicare+Choice or Medicare Advantage

plan, however, the statute provides that he or she "is entitled to receive benefits under [the

Medicare statute] . . . through enrollment in a [Medicare+Choice or Medicare Advantage] plan

under this part [i.e., part C, not part A of the Medicare Act]." 42 U.S.C. § 1395w-21(a)(1)(B).

After a Medicare beneficiary enrolls in a Medicare+Choice or Medicare Advantage plan, the

Secretary makes payment to the contracted plan under part C, not part A. 42 U.S.C. § 1395w-

21(i).

     35.    The Medicare statute requires the Secretary to make payments under part C to a

Medicare+Choice or Medicare Advantage plan "*instead of* the amounts which (in the absence of

the contract) would otherwise be payable under parts A and B [of the Medicare statute] for items

and services furnished to the individual." 42 U.S.C. § 1395w-21(i)(1) (emphasis added). Thus,

payment for patients who are enrolled in a Medicare+Choice or Medicare Advantage plan under part C of the Act is made under part C of the Act, not to the provider of services under part A.

36.    Nevertheless, for purposes of the DSH payment calculation, described below, the Secretary now contends that Medicare part C days (for which patients were receiving benefits under part C of the Act) should be counted as days for patients who were entitled to benefits under part A for those days.

37.    The Secretary has asserted in other cases that payments to the Medicare part C plans are made from the Medicare part A trust fund; however, there is no such fund.  Payments from the Secretary to part C plans are actually made from the Federal Hospital Insurance Trust Fund, which is established on the books of the Treasury pursuant to 42 U.S.C. § 1395i.  Part C of the Medicare Act expressly authorizes expenditures by the Secretary from the Hospital Insurance Trust Fund for payments to a Medicare+Choice organization for individuals "enrolled under this part [*i.e.*, Part C] with the organization."  42 U.S.C. § 1395w-23(f).

## VI.    MEDICARE DSH PAYMENT

38.    Since 1983, the Medicare program has paid most hospitals under a prospective payment system for inpatient hospital services furnished to an individual who is entitled to benefits under Medicare part A.  42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412.

39.    Under the prospective payment system, Medicare pays hospitals predetermined, standardized amounts per discharge.

40.    Upward percentage adjustments may be applied to the standard rate paid under the prospective payment system by certain qualifying hospitals.    *See, e.g.,*  42 U.S.C. § 1395ww(d)(5).

41.    One of those hospital-specific payment adjustments is the DSH payment for hospitals that serve a disproportionate share of low-income patients. *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

42.    The DSH payment is intended to compensate qualifying hospitals for higher costs of treating low-income patients. *See* S. Rep. No. 98-23, at 54 (1983), *reprinted in* 1983 U.S.C.C.A.N. 143, 194; H.R. Rep. No. 98-25, at 141-42, *reprinted in* 1983 U.S.C.C.A.N. 219, 360-61; *see also Samaritan Health Ctr. v. Heckler*, 636 F. Supp. 503, 508 (D.D.C. 1985).

43.    Since the DSH payment was mandated by Congress in 1986, this Court and others have repeatedly found failures on the Secretary's part to implement the DSH payment in accordance with Congress's intent. *See, e.g., Samaritan Health Ctr. v. Bowen*, 646 F. Supp. 343, 344, 347 (D.D.C. 1986); *Cabell Huntington Hosp. v. Shalala*, 101 F.3d 984, 990 (4th Cir. 1996) (characterizing the Secretary's original, restrictive interpretation of the DSH statute as an attempt "to rewrite the will of Congress" by "an agency [that has been] hostile from the start to the very idea of making the [DSH] payments at issue"); *Clark Reg'l Med. Ctr. v. U.S. Dep't of Health & Human Servs.*, 314 F.3d 241, 249 (6th Cir. 2002) (commenting that the Secretary "cannot simply interpret the [DSH] regulation to vary so as to always disadvantage the subject hospital"); *Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20, 37, 54 n.35 (D.D.C. 2008) (observing that the Secretary overlooked systemic errors in the agency's calculation of one of the two major components of the DSH payment calculation, which had "potentially enormous" payment impacts, by mere "administrative fiat").

### THE DSH PAYMENT CALCULATION

44.     A hospital's "disproportionate patient percentage" determines both the hospital's qualification for the DSH payment and the amount of the DSH adjustment that a qualifying hospital receives.  *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. §§ 412.106(c)-(d).

45.     The disproportionate patient percentage is defined as the sum of two fractions expressed as percentages.  42 U.S.C. § 1395ww(d)(5)(F)(vi).

46.     Generally, the greater the two percentages, the greater the DSH payment made to a hospital.

### THE MEDICARE/SSI FRACTION

47.     The first fraction that is used to calculate the DSH payment is referred to herein as the "Medicare/SSI" fraction.  The statute defines this first fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of *patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplemental security income benefits* (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of *patients who (for such days) were entitled to benefits under part A of this subchapter…*

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).

48.     CMS calculates the Medicare/SSI fractions for all hospitals, and the Secretary's intermediaries apply them to determine the DSH payments made to qualifying hospitals in notices of program reimbursement for hospital cost reporting periods.  *See* 42 C.F.R. § 412.106(b).

<u>THE MEDICAID FRACTION</u>

49.    The second fraction that is used to compute the DSH payment is referred to herein as the "Medicaid" fraction.  The statute defines the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX [the Medicaid program], but who were *not entitled to benefits under part A of this subchapter*, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).

50.    The Secretary's intermediaries determine the Medicaid fractions and apply them to determine the DSH payments made to hospitals in notices of program reimbursement for hospital cost reporting periods.  *See* 42 C.F.R. § 412.106(b).

<u>SIGNIFICANCE OF THE TERM "ENTITLED TO BENEFITS UNDER PART A"</u>

51.    The plaintiff Hospitals' challenge to the Secretary's decision turns on the question of whether Medicare part C days should be counted as days for patients who were "entitled to benefits under part A" of Medicare.

52.    If "entitled to benefits under part A" means entitled to have Medicare part A benefits paid for the patient days in question, as this Court and another district court have recently decided, and four federal circuit courts of appeals have held, then all Medicare part C days must be excluded from the Medicare/SSI fraction, and they must be included in the numerator of the Medicaid fraction for patients who were also eligible for Medicaid.  *See Northeast Hosp. Corp.*, 699 F.Supp.2d at 92-94; *Metropolitan Hosp., Inc.*, 702 F.Supp.2d at 821-25; *see also Jewish Hosp. Inc. v. Sec'y of Health & Human Servs.*, 19 F.3d 270, 275 (6th Cir. 1994); *Cabell Huntington Hosp.*, 101 F.3d at 987-88; *Legacy Emanuel Hosp. & Health Ctr. v.*

*Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996); *Deaconess Health Servs. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996) (per curiam), *aff'g* 912 F. Supp. 438, 447 (E.D. Mo. 1995).

53.    If entitled to benefits means eligible for or enrolled in Medicare part A, as the Secretary asserts, then Medicare part C days must be included in the Medicare/SSI fraction and excluded from the numerator of the Medicaid fraction. The addition of Medicare part C patient days to the denominator and numerator of the Medicare/SSI fraction (by erroneously treating Medicare part C patients as if they were entitled to part A benefits) would dilute the resulting percentage and thus further reduce DSH payments to hospitals. *See* PRRB Dec. No. 2010-D48 at 11, 13-14, *reprinted in* Medicare & Medicaid Guide (CCH) ¶ 82,675 (Sept. 24, 2010). This dilution would occur because, unlike low-income Medicare beneficiaries who cannot afford the premiums required to purchase part B supplemental coverage, Medicare part C enrollees by definition *have* purchased part B coverage. *See* 42 U.S.C. § 1395w-21(a). Because they generally have the economic means to afford to pay part B premiums, Medicare part C enrollees are less likely to qualify for SSI benefits than the Medicare beneficiaries who are enrolled automatically in part A (at no cost), but do not have the resources to purchase part B supplemental coverage. Thus, the Secretary's current interpretation that "entitled to benefits" means the same thing as "eligible for benefits" would result in a dilution of the Medicare/SSI fraction that would substantially reduce DSH payments to hospitals.

54.    The inclusion of Medicare part C patient days in the Medicare/SSI fraction also produces a mismatch of the patient days that are included in that component of the DSH adjustment calculation and the part A prospective payments to which the adjustment applies. The rates paid under the prospective payment system, which includes the DSH adjustment, apply only for discharges of patients who are entitled to have Medicare part A benefits paid for their

hospitalization.  While the Secretary wants to count Medicare part C patient days in a way that dilutes the Medicare/SSI fraction and reduces the numerator of the Medicaid fraction, she does not contend that the sum of the Medicare/SSI and Medicaid fractions should be multiplied by the part C payments made to hospitals.  In fact, Congress determined that these fractions can only be multiplied by part A payments.  *See* 42 U.S.C. §  1395ww(d)(5)(F)(ii).

SECRETARY'S ORIGINAL INTERPRETATION OF "ENTITLED TO BENEFITS UNDER PART A"

55.    When the Secretary first adopted rules implementing the DSH statute in 1986, and for about 18 years after that, the Secretary interpreted the term "entitled to benefits under part A" to mean entitled to have payment made under part A for the specific days when an individual was an inpatient of a hospital.

56.    In 1986, the Secretary promulgated an interim final rule and a final rule implementing the DSH statute.   *See* 51 Fed. Reg. 16772 (May 6, 1986) (interim final rule); 51 Fed. Reg. 31454 (Sept. 3, 1986) (final rule).   The Secretary's 1986 interim final rule defined the numerator of the Medicaid fraction to include days for patients who were "*entitled* to Medicaid but not to Medicare Part A," 51 Fed. Reg. at 16788 (emphasis added), and the 1986 final rule further explained that the Secretary's use of the term "entitled to" in the regulation meant "paid by" Medicaid or Medicare part A, respectively.  51 Fed. Reg. at 31460-61.

57.    The Secretary's 1986 rules restricted the numerator of the Medicaid fraction by including only those Medicaid-eligible patient days that were paid by Medicaid and excluding other Medicaid eligible patient days that were not paid for by Medicaid.  This had the effect of reducing DSH payments to hospitals.  *See In re Medicare Reimbursement Litig.*, 414 F.3d at 13.

58.    In defense of litigation challenging the Secretary's restrictive interpretation of the Medicaid fraction, the Secretary argued that she reasonably interpreted "eligible" to include only

those days that were covered and paid for by Medicaid because the narrow interpretation of "eligible for [Medicaid]" mirrored the agency's parallel interpretation of "entitled" to include only those days that were covered and *paid for by Medicare part A. See, e.g., Legacy Emanuel Hosp.*, 97 F.3d at 1265 (noting the Secretary's position that "the [Medicare/SSI fraction] only counts patient days paid by Medicare" while the numerator of the Medicaid fraction counted only those patient days paid by Medicaid).

59.    The Secretary also reiterated the same interpretation of the term "entitled to benefits under part A" in a 1990 rulemaking construing the next subparagraph (G) of the same statute (§ 1395ww(d)(5)) that prescribes the DSH payment calculation in subparagraph (F). *See* 55 Fed. Reg. 35990, 35996 (Sept. 4, 1990).  In that rule, the Secretary interpreted "entitled to benefits under part A" to mean entitled to have Medicare part A payment made, and confirmed that Medicare eligible patient days occurring after an individual had exhausted Medicare part A benefits would not be counted as patient days for which the individual was "entitled to benefits under part A." *Id.*  In other words, the Secretary determined that a Medicare beneficiary who has lifetime reserve days available to apply to inpatient hospital days occurring after he has exhausted part A benefits, *see* supra ¶ 29, but elects not to use them, should not be counted as "entitled to benefits under part A" for those days.  When a Medicare eligible patient elects not to use available lifetime reserve days, no part A benefits are paid for those days and none of those days are charged against the individual's utilization of part A benefits because the individual is not "entitled to benefits" for those days.  It therefore follows that if an individual who is only enrolled in Medicare part A can elect not to be entitled to benefits under part A, then an individual who elects to receive benefits under Medicare part C *instead* of Medicare part A is likewise not entitled to benefits under part A.

60.     The Secretary once again applied the same interpretation of "entitled" in a 1996 ruling that Medicare eligible days that were billed to and paid for by Medicaid, after a patient had exhausted Medicare part A benefits, should be counted in the numerator of the Medicaid fraction. *See Presbyterian Med. Ctr. of Phila. v. Aetna Life Ins. Co.*, CMS Adm'r Dec., *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 45,032 at p.4 (Nov. 29, 1996).

<u>1997 RULING ON MEDICAID ELIGIBLE DAYS</u>

61.     By 1996, four consecutive federal appellate courts had invalidated the Secretary's original rule interpreting "eligible" for Medicaid to mean paid by Medicaid on the grounds that the Secretary's narrow interpretation of the term "eligible" violated the plain meaning of the DSH statute by conflating "eligible" with "entitled." *See Jewish Hosp. Inc.,* 19 F.3d at 275; *Cabell Huntington Hosp.*, 101 F.3d at 987-88; *Legacy Emanuel Hosp.*, 97 F.3d at 1265; *Deaconess Health Servs. Corp.*, 83 F.3d 1041 (8th Cir. 1996) (per curiam).

62.     Following those losses, in February 1997, CMS issued Ruling 97-2, acquiescing in the courts' holdings as to the meaning of "eligible" for Medicaid for purposes of calculating the DSH payment. In the 1997 ruling, CMS determined to count all patient days for individuals who are enrolled in Medicaid as days for patients who are "eligible" for Medicaid, regardless of whether Medicaid made payment to the hospital for the services furnished to the patient. *See* Ruling 97-2, *available at* https://www.cms.gov/Rulings/downloads/hcfar972.pdf. In publishing Ruling 97-2, the Secretary did not change her interpretation of the term "entitled," which she had previously interpreted as meaning entitled to have payment made on the individual's behalf by part A.

63.     In 1998, the Secretary amended the DSH regulation, 42 C.F.R. § 412.106, to incorporate the policy change announced in the 1997 ruling. 63 Fed. Reg. 40954, 40984-85,

41004 (July 31, 1998).  In amending her regulation in 1998, the Secretary did not change her

interpretation of the term "entitled," which she had previously interpreted as meaning entitled to

have payment made on the individual's behalf by part A.

SECRETARY'S TREATMENT OF MEDICARE PART C DAYS IN THE DSH CALCULATION

64.    After Congress added the Medicare+Choice program to part C in 1997, and

though Congress made substantive changes to the DSH statute in 1997, the Secretary did not

publish any additional rules or explicit guidance about counting these patient days in the DSH

payment calculation until 2003.

65.    In a 2003 notice of proposed rulemaking relating to several aspects of the DSH

payment, the Secretary addressed "questions whether patients enrolled in a [Medicare+Choice]

Plan should be counted in the Medicare fraction or the Medicaid fraction . . . ."  68 Fed. Reg.

27154, 27208 (May 19, 2003).

66.    In response to these questions, the Secretary stated that "once a beneficiary has

elected to join an M+C plan, that beneficiary's benefits are no longer administered under Part

A."  *Id.*  Thus, the Secretary proposed to "clarify" that:

> once a beneficiary elects Medicare Part C, those patient days attributable to the
> beneficiary should not be included in the Medicare fraction of the DSH patient
> percentage.  These patient days should be included in the count of total patient
> days in the Medicaid fraction (the denominator), and the patient's days for the
> [Medicare+Choice] beneficiary who is also eligible for Medicaid would be
> included in the numerator of the Medicaid fraction.

*Id.*

67.    The Secretary proposed no amendment to the existing DSH regulation to

effectuate this clarification of the existing rule.  *See id.* at 27229-30 (proposing other

amendments to DSH regulation at § 412.106 to implement other proposed changes to the rule).

*Id.*  This and other aspects of the 2003 proposed rule relating to the DSH payment were not

included, however, in the final rule that was published on August 1, 2003. *See* 68 Fed. Reg. 45346, 45422 (Aug. 1, 2003).

68.     In August 2004, the Secretary published a final rule adopting a policy change with respect to the counting of Medicare+Choice enrollees in the DSH payment calculation. *See* 69 Fed. Reg. at 49099, 49246; *see also* 72 Fed. Reg. 47130, 47384 (Aug. 22, 2007) (discussing the 2004 "policy change"). The final rule that the Secretary adopted was the opposite of the one that she proposed in May 2003 and was adopted without affording hospitals the opportunity for notice and comment. In the preamble to the 2004 final rule, the Secretary stated that CMS had "adopt[ed] a policy" and "revis[ed]" the DSH regulation to begin to count Medicare+Choice patient days as Medicare part A patient days in the Medicare/SSI fraction, effective October 1, 2004. 69 Fed. Reg. at 49099. In that rulemaking, the only change made to the text of the regulation was that the Secretary deleted the word "covered" where it previously appeared in the definition of the numerator (but not the denominator) of the Medicare/SSI fraction in 42 C.F.R. § 412.106(b)(2)(i). *See id.*; *compare* 42 C.F.R. § 412.106(b)(2)(i) (2002) *with* 69 Fed. Reg. at 49246 (revised text of § 412.106(b)(2)(i)).

69.     The Secretary's sole explanation for the modification to the rule was to state that Medicare+Choice enrollees "are still, in some sense entitled to benefits under Medicare Part A." *See* 69 Fed. Reg. at 49099. The August 2004 final rule did not articulate in what "sense" Medicare+Choice enrollees are "entitled to benefits under Part A."

70.     In 2007, the Secretary published in the Federal Register notice of a further change to the DSH regulation, which was adopted without advance notice or opportunity for comment. *See* 72 Fed. Reg. at 47384. The 2007 notice stated that the agency "inadvertently" forgot to change the text of the regulation in 2004 to the extent necessary "to conform to the preamble

language" in the 2004 rulemaking relating to Medicare+Choice days in the DSH calculation. *Id.* Accordingly, the Secretary decided to make what the agency characterized as a "technical correction" to the text of section 412.106(b)(2) in order to effectuate "the policy iterated in that [2004] rule." *Id.* Following that amendment, the portion of the DSH regulation defining the numerator and denominator of the SSI fraction referred to patients who are "entitled to Medicare Part A (or [Medicare+Choice] (Part C))." *Id.* at 47411 (amending § 412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added).

71.    The Secretary further amended that regulation on August 16, 2010 by replacing the word "or" with the word "including" so it refers to patients who are "entitled to Medicare Part A (*including* Medicare Advantage (Part C))." 42 C.F.R. §§ 412.106(b)(2)(i)(B) and (iii)(B) (2010) (emphasis added); *see also* 75 Fed. Reg. 50042, 50285 (Aug. 16, 2010).

72.    Despite her statements in the Federal Register and elsewhere, the Secretary did not include Medicare part C days in the Medicare/SSI fraction for any period prior to 2007. In 2007, she only partially included Medicare part C days in the Medicare/SSI fraction, and the Secretary has not published Medicare/SSI fractions for 2008 through 2010. Although the Secretary is now attempting to treat Medicare part C days as days for which a patient is entitled to Medicare part A for DSH purposes, she does not treat Medicare part C days as part A days in other contexts. For example, the Secretary's calculation of Medicare payments for graduate medical education is based, in part, on "the fraction of the total number of inpatient-bed-days . . . during the period which are attributable to patients *with respect to whom payment may be made under part A.*" 42 U.S.C. § 1395ww(h)(3)(C) (emphasis added). The Secretary does not include Medicare part C days as days "which are attributable to patients with respect to whom payment may be made under part A" for purposes of the graduate medical education payment. *See* 53

Fed. Reg. 36589, 36600 (Sept. 21, 1988) ("As is the case with other apportionment issues, hospital inpatient days of Medicare beneficiaries whose hospital stays are paid by risk basis health maintenance organizations are recorded as non-Medicare days").

73.     Thus, when Congress enacted the Medicare part C program in 1997, it provided for "additional" payments for graduate medical education costs of services furnished to Medicare part C patients.  *See* 42 U.S.C. §§ 1395ww(d)(11) and (h)(3)(D).  By enacting these new provisions for "additional" payments, Congress expressed its intent that Medicare+Choice patients should *not* be regarded as patients "with respect to whom payment may be made under part A," or as "part A inpatient days," as described in the pre-existing provision for payment of graduate medical education costs.  *Id.* § 1395ww(h)(3)(C).  Otherwise, there would have been no need for Congress to enact the provision for a separate, additional graduate medical education payment to be made with respect to Part C patients in Medicare+Choice plans.

### 2010 COURT DECISIONS CONSTRUING "ENTITLED"

74.     In March 2010, this Court addressed the Secretary's determination that the numerator of the Medicaid fraction should exclude patient days for individuals who were eligible for Medicaid and were also receiving Medicare benefits through enrollment in a Medicare+Choice plan under part C of the Medicare statute.  *Northeast Hosp. Corp.*, 699 F. Supp. 2d. at 92-95.  The Court ruled that the Secretary's determination violates the plain meaning of the statute because the entitlement to part A benefits "consist[s] of entitlement to have payment made under, and subject to the limitations in, [Medicare] part A.'"  *Id.* at 93 (quoting 42 U.S.C. § 426(c)(1)).  The Court also found that the Secretary's interpretation of "entitled" is unreasonable because the Secretary provided no explanation for the agency's inconsistent interpretation of "entitled" for purposes of calculating the Medicare DSH payment

under subparagraph (F) of section 1395ww(d)(5) and its prior interpretation of the exact same phrase as it is used in the very next subparagraph (G) of the same statute.

75.    In April 2010, the United States District Court for the Western District of Michigan also declared the Secretary's interpretation of "entitled" invalid.  In that case, the district court held that "someone who has exhausted his Medicare Part A [benefits] and therefore no longer has a right to payment of such benefits, is no longer 'entitled to' Medicare Part A benefits for purposes of DSH reimbursement." *Metropolitan Hosp.*, 702 F. Supp. 2d at 825.  In the context of the DSH payment calculation under section 1395ww(d)(5)(F), "the statute places *no* significance whatsoever on whether the patient, at the time of the hospital stay, might still have been entitled to benefits for (not exhausted his coverage for) other services outside the hospital, such as skilled nursing facility or home health services." *Id.* at 824 (emphasis in original).  Rather, the court found that the DSH statute refers to an individual's right to have Medicare part A benefits paid for the inpatient hospital services furnished to him or her on the *specific days* when he or she was an inpatient of the hospital in question. *Id.* at 822-25 .  The statutory focus in the context of the DSH calculation is "whether each patient was 'entitled to' Medicare Part A coverage *specifically 'for such days', i.e., those days of care which the claiming hospital provided to that patient.*" *Id.* at 824 (emphasis in original).  The *Metropolitan* court also concluded that the terms "eligible" and "entitled" are "conceptually and practically distinct and *not* to be used interchangeably." *Metropolitan Hosp.*, 702 F. Supp. 2d at 825 (emphasis in original).

## VII.    FACTS SPECIFIC TO THIS CASE

76.    Each of the 129 plaintiff Hospitals received a notice of program reimbursement including the intermediary's DSH payment determination for each of the cost reporting periods

at issue.  There are 328 cost reporting periods at issue in this case ranging from 1999 through 2004.

77.    Each of the plaintiff hospitals is participating in one of thirty-five group appeals to the PRRB contesting the Secretary's calculation of their Medicare DSH payments.    These group appeals were assigned PRRB case numbers 04-0662GC, 04-1905GC, 04-2110GC, 05-0190GC, 05-0314GC, 05-0516GC, 05-0622GC, 05-1225G, 05-1459GC, 05-1547GC, 05-1604GC, 05-1791G, 05-1942GC, 05-1970G, 05-2158G, 05-2182G, 06-0013GC, 06-0056GC, 06-0057GC, 06-0091GC, 06-0241GC, 06-0259GC, 06-0292GC, 06-1432GC, 06-1730GC, 07-1719G, 07-2079G, 08-1851GC, 08-2369GC, 09-0512GC, 09-0681GC, 09-2284GC, 09-2296GC, 09-2319GC, and 09-2321GC.  The plaintiff hospitals claim in those thirty-five group appeals that they were improperly underpaid for DSH for the periods at issue because the Secretary improperly excluded Medicare part C days from the numerator of the DSH Medicaid fraction. The plaintiff hospitals contend that those days must be included in the numerator of the Medicaid fraction, to the extent that the patient is also eligible for Medicaid for such days.

78.    In addition, the Hospitals contend that Medicare part C days must be, and were, excluded from the Medicare/SSI fraction for the periods at issue here.  At the Board hearing for these cases, the Hospitals presented evidence showing that the Secretary has never counted Medicare part C days in the SSI fraction for the periods at issue here, except for a miniscule number of days that were counted due to a programming error by the Secretary's agency.  Even though the Board gave the agency additional time following the hearing in these cases to provide any evidence to refute the Hospitals' detailed supporting data, the Secretary provided nothing, nor did she dispute any of the data that was provided by the Hospitals.  Indeed, the Secretary's counsel declined even to cross-examine the Hospitals' witness.  Furthermore, the Secretary

furnished no evidence to support her own assertions that Medicare part C days were included in the Medicare/SSI fractions for the time periods at issue here.

79.     Each of the plaintiff hospitals timely appealed the calculation of the Medicare/SSI fraction to the PRRB within 180 days of the hospital's receipt of the intermediary's notice of program reimbursement for the cost reporting periods at issue.

80.     The plaintiff hospitals in each group appeal estimated that the amount in controversy on their claim to have Medicare part C days included in the Medicaid fraction (to the extent the patient is also eligible for Medicaid) and excluded from the Medicare/SSI fraction is approximately $60 million.

81.     On May 19, 2010, the Board conducted a hearing with respect to these thirty-five group appeals.

82.     After the hearing, the Secretary's Board issued a decision dated September 30, 2010.

83.     In its September 30, 2010 decision, the Secretary's Board ruled that "the plain language of the Medicare DSH statute requires the inclusion of [Medicare part C] days in the numerator of the Medicaid fraction." The Board stated that it agreed with this Court's holding in *Northeast Hospital* that the term "entitled to benefits under part A," as used in the DSH statute, means "the <u>right to have payment made</u> under part A for the inpatient hospital days in question." (Emphasis in original). Once an individual has elected to enroll in a Medicare+Choice or Medicare Advantage plan under part C, the Board noted that "he or she is no longer 'entitled to benefits under part A,' because he or she is no longer entitled to have payment made under part A for the days at issue."

84.     Further, the Board agreed with this Court's decision in *Northeast Hospital* that the agency's failure to explain its inconsistent interpretations of the term "entitled to benefits under part A," as used in adjacent subparagraphs of section 1395ww(d)(5), was arbitrary and capricious.

85.     In addition, the Board noted that it could "discern no rational explanation for CMS' inconsistent interpretation of the term 'entitled' as used in the same sentence within the DSH statute."   The Board stated that "CMS states that SSI beneficiaries are 'entitled to supplemental security income benefits' only when entitled to payment for the specific days at issue, while at the same time finding that any individual who is eligible for benefits under Medicare part A is also 'entitled to benefits under part A,' regardless of whether or not Medicare actually makes payment for the days at issue."

86.     The Board noted that "[t]his same unexplained distinction is also evident in CMS' treatment of part A days for determining a hospital's payment for graduate medical education." The Board found that "Congress clearly manifested its intent in the GME statute that M+C patients should not be regarded as patients who are 'entitled to benefits under part A."

87.     The Board further found that the Secretary's "current interpretation of the DSH statute applied in these cases improperly conflates the statutory terms 'entitled' and 'eligible' as used in a single sentence within the DSH statute."   The Board noted that it agreed with the court's holding in *Metropolitan* that "the statutory terms 'entitled' and 'eligible' are 'conceptually and practically distinct and not to be used interchangeably'" and noted that the "impropriety of conflating" these terms "has been established for over a decade."

88.     Finally, the Board found that the Secretary's position "is contrary to the DSH regulation that was in effect during the periods at issue."   The Board found that the regulation in

effect during the periods at issue "interpreted the statutory phrase 'entitled to benefits under part A' to mean 'covered' by Medicare part A, and the part A coverage regulations define 'covered' to mean 'services for which the law and regulations authorized Medicare payment.'" (Internal citations omitted).

89.     The Board noted that it found the Hospitals' evidence, which was not challenged by the Secretary, "persuasive that CMS' actual practice was to not count the [Medicare part C] days in the SSI fraction prior to 2004" and that the Secretary "does not have a long-standing policy of counting part C days as part A days for DSH purposes."

90.     Upon review of the Board's decision, the Acting Deputy Administrator of CMS, in a decision signed on November 22, 2010, reversed the ruling of the Secretary's Board and determined that all of the days at issue should be excluded from the Medicaid fraction used to calculate the Hospitals' DSH payment.

91.     The Acting Deputy Administrator's decision constitutes the Secretary's final decision in this matter.

92.     The Secretary's decision concluded that "the M+C days should not be counted in the Medicaid fraction, but rather . . . should be counted in the Medicare fraction." The Acting Deputy Administrator found that "[b]ased on the plain language of the statute . . . the statutory phrase in the Medicaid proxy 'but who were not entitled to benefits under Medicare part A of this title' forecloses the inclusion of the days at issue in this case in the numerator of the Medicaid proxy."

93.     Although the Secretary's decision stated that Medicare part C days should be counted in the Medicare/SSI fraction, she did not actually count the plaintiff Hospitals' Medicare part C days in their Medicare/SSI fractions. To the contrary, the Secretary found that the

providers' data "is not sufficient to order the inclusion of the Providers' M+C days in the DSH calculation in this case." The "data" to which the Secretary's decision refers is the unrebutted evidence, *see* supra ¶ 78, that the Hospitals furnished at the Board hearing to substantiate that the Secretary never counted Medicare part C days in the Medicare/SSI fractions prior to 2007.

94.    The Secretary's decision faulted the Hospitals for their failure to "submit documentation specific to each provider to demonstrate that the M+C days were not included" in their Medicare/SSI fractions. The Secretary's decision noted that the Hospitals had instead submitted "data relating to hospitals not involved in this case." That is unequivocally untrue. The names of the hospitals for which information was presented at the Board hearing were not disclosed, so it is hard to see how the Secretary could conclude that none of them are part of this case. In fact, 40 of the 139 cost reporting periods that the Hospitals' consultant analyzed are part of this case, but the Secretary never even asked. Furthermore, the reason that the Hospitals were unable to present an analysis for *all* of the cost reporting periods at issue in this case is that the Secretary has sole possession of the patient-level data, known as the "routine use" data, that the Hospitals would need to determine whether Medicare part C days were included in the Medicare/SSI fractions for the cost reporting periods at issue in these appeals. And, the Secretary has, in most instances, refused to furnish that data to hospitals.

95.    The data that was presented at the Board hearing represented data from 139 fiscal years for which the Hospitals' consultant has been able to obtain the data needed to determine whether Medicare part C days were included in the Medicare/SSI fractions. These 139 fiscal years represented every cost reporting period for which the Hospitals' consultant has received routine use data from the Secretary, despite making hundreds of additional requests for such data. Thus, the Secretary's decision faulted the Hospitals for not furnishing data relating to the

specific Hospital fiscal years at issue in this case, while at the same time, the Secretary alone possesses that data and has refused to furnish it to the Hospitals. Indeed, rather than faulting the Hospitals for failing to analyze data that the Secretary alone possesses, the Secretary could have conducted her own analysis of that data before she issued her decision in this case to determine whether Medicare part C days were included in the Medicare/SSI fraction for the cost reporting periods at issue in this case.

96.    Ultimately, the Secretary concluded that the days at issue could not be included in the numerator of the Medicaid fraction because "[b]ased on the plain language of the statute," patients enrolled in an M+C plan are necessarily "entitled to benefits under part A." Paradoxically, however, the Secretary's decision also concluded that the plaintiff Hospitals' Medicare part C days cannot be included in the Medicare/SSI fraction as days for patients who were "entitled to benefits under part A" because the Hospitals failed to produce data that the Secretary alone possesses and refuses to produce showing that Medicare part C days were actually excluded from the Medicare/SSI fractions for the specific cost reporting periods at issue in this case. Thus, the untenable result of the Secretary's decision is that the plaintiff Hospitals' part C days have been excluded entirely from the Medicare/SSI fraction and from the numerator of the Medicaid fraction.

97.    The Secretary's decision was sent to the Hospitals' counsel under cover of a letter dated November 29, 2010, and was received by the Hospitals' counsel on November 30, 2010.

98.    By the filing of this Complaint, the Hospitals have timely commenced this action for judicial review of the Secretary's decision in accordance with 42 U.S.C. § 1395oo(f).

## VIII.  ASSIGNMENT OF ERRORS

99.    The Secretary's final decision below should be set aside because it is contrary to law, arbitrary and capricious, and not based upon substantial evidence in the record.  *See* 42 U.S.C. § 1395oo(f); 5 U.S.C. § 706.

100.    The Secretary's decision is contrary to the Medicare statute because the patients at issue were eligible for Medicaid and they were not entitled to benefits under part A for such days because they had elected instead to receive benefits under the M+C program under part C of the Medicare Act.  *See* 42 U.S.C. § 1395w-21(a)(1)(B); *Northeast Hosp.*, 699 F. Supp. 2d at 92-94; *Metropolitan Hosp.*, 702 F. Supp. 2d at 821-25.

101.    The Secretary's expansive interpretation of the term "entitled to benefits under part A" in the context of the Medicaid fraction impermissibly conflates the terms "eligible" and "entitled," as used in the DSH statute, by construing the statute to mean that Medicare+Choice beneficiaries remain entitled to Medicare part A simply by meeting the eligibility criteria for enrolling in Medicare part A.  This violates fundamental principles of statutory construction, as well as the earlier decisions of four consecutive federal courts of appeals, all of which concluded that the Secretary cannot construe these distinct terms to have the same meaning.  *See Jewish Hosp. Inc.,* 19 F.3d at 275; *Cabell Huntington Hosp.*, 101 F.3d at 987-88; *Legacy Emanuel Hosp. & Health Ctr.*, 97 F.3d at 1265; *Deaconess Health Servs. Corp.*, 83 F.3d at 1041.

102.    The Secretary's decision is arbitrary and capricious because she has provided no reasoned explanation for her diametrically opposed interpretations of the statutory term "entitled."  The Secretary applies different interpretations to the same term, "entitled," as used in a single sentence of the DSH statute and in an adjacent subparagraph of the Medicare statute.  42 U.S.C. § 1395ww(d)(5)(F)(vi)(I)-(II), (G).  First, the Secretary interprets the term "entitled" as it relates to SSI benefits narrowly to include only those days for patients who were entitled to have

SSI benefits paid to them on those days (with respect to the numerator of the Medicare/SSI fraction), while at the same time interpreting the term "entitled" as it relates to the denominator of the Medicare/SSI fraction more broadly to include days for patients for whom no part A payment was made at all. 75 Fed. Reg. at 50280; *see also* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). Similarly, for purposes of the adjacent subparagraph (G) of the Medicare statute (which governs Medicare dependent hospitals), the Secretary narrowly interpreted the term "entitled" to mean entitled to payment under part A, throughout the time periods at issue here and until shortly after Judge Bates issued his decision in *Northeast Hospital*. In contrast, for purposes of calculating the numerator of the Medicaid fraction, the Secretary broadly interprets the term "entitled" as it relates to benefits under Medicare part A to include anyone who is eligible to enroll in Medicare part A, regardless of whether Medicare part A makes payment. The only plausible explanation for the Secretary's inconsistent treatment of the term "entitled" is that it has the effect of reducing Medicare payments in each instance. *See Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 799 (D.C. Cir. 1984) ("It would be arbitrary and capricious for [the Secretary] to bring varying interpretations of the statute to bear, depending upon whether the result helps or hurts Medicare's balance sheets").

103.    The Secretary's decision is arbitrary and capricious because the Secretary has not articulated a rational explanation for her inconsistent treatment of Medicare part C days with respect to the DSH payment and in other Medicare Part A payment contexts, such as the payment for graduate medical education costs. *See Walter O. Boswell*, 749 F.2d at 799.

104.    The Secretary's decision in this case conflicts with the regulation in effect during the periods at issue, and with the Secretary's longstanding interpretation of that regulation. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (an agency's interpretation of its

regulation cannot be sustained if it conflicts with the plain language of the regulation or indications of the agency's intent at the time it was adopted). When the Secretary first adopted the DSH regulation in 1986, and for about 18 years afterward, she interpreted the DSH statute's use of the term "entitled" to mean days that were "covered" and "paid" by Medicare part A. *See* 51 Fed. Reg. at 16788; *id.* at 31460-61; *Presbyterian Med. Ctr. of Phila. v. Aetna Life Ins. Co.*, CMS Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 45,032 (Nov. 29, 1996). The Secretary is bound by the regulations in effect during the 1999 to 2004 periods at issue here. Moreover, having established her prior interpretation of the term "entitled to benefits under part A" in the Medicare DSH calculation, the Secretary was required to invoke the notice and comment rulemaking procedure mandated by the Administrative Procedure Act to change that interpretation and such changes could only have prospective effect. *Alaska Prof'l Hunters Ass'n v. FAA*, 177 F.3d 1030, 1033-34 (D.C. Cir. 1999) ("Once an agency gives its regulation an interpretation, it can only change that interpretation as it would formally modify the regulation itself: through the process of notice and comment rulemaking'") (quoting *Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 586 (D.C. Cir. 1997)). It was not until August 2004 that the Secretary announced in the Federal Register that she was "adopting a policy" and "revising our regulation" to begin counting Medicare part C days in the Medicare/SSI fraction as days for patients who are entitled to benefits under part A. Furthermore, those changes were effective only prospectively after the cost reporting periods at issue. *See* 69 Fed. Reg. 48916, 49099 (Aug. 11, 2004).

## IX.    REQUEST FOR RELIEF

105.    WHEREFORE, the plaintiff Hospitals request an Order:

A.     declaring invalid and setting aside the Secretary's final decision excluding the patient days at issue from the numerator of the Medicaid fraction used to calculate the Hospitals' Medicare DSH calculation for the cost reporting periods at issue;

B.     directing the Secretary to recalculate the Hospitals' Medicare DSH payments for their fiscal years ending 1999 through 2004 by including the Medicaid eligible Medicare part C days at issue in the numerator of the Medicaid fraction for those periods and to promptly pay the Hospitals the additional DSH payments due as a result of that correction, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

C.     requiring the Secretary to pay legal fees and costs of suit incurred by the plaintiff; and

D.     providing such other relief as the Court may consider appropriate.


Respectfully submitted,

Christopher L. Keough
 DC Bar No. 436567
J. Harold Richards
 DC Bar No. 469524
KING & SPALDING L.L.P.
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006-4706
(202) 737-0500 (phone)
(202) 626-3737 (fax)

Counsel for Plaintiffs

Dated: January 21, 2011